UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KOURIOCKEIN VANN,
                Plaintiff,

v.

CORRECTION OFFICER Y. SUDRANSKI,
LIEUTENANT S. HANN, R.N. CHARLENE
CODY, R.N. W. MILLER, DR. JANICE WOLF-
FRIEDMAN, CORRECTION OFFICER JOHN
WARNER, and SUPERINTENDENT
WENDLAND,
                Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

16 CV 7367 (VB)

Briccetti, J.:

    Plaintiff Kouriockein Vann, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging Correction Officer ("C.O.") Y. Sudranski, Lieutenant S. Hann ("Lt. Hann"), R.N. Charlene Cody ("Nurse Cody"), R.N. W. Miller ("Nurse Miller"), Dr. Janice Wolf-Friedman, C.O. John Warner, and Superintendent Wendland ("Supt. Wendland"), employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), violated his constitutional rights while he was incarcerated at Green Haven Correctional Facility ("Green Haven").[1]

    On May 31, 2017, C.O. Sudranski and Lt. Hann answered plaintiff's complaint. (Doc. #41).

---

[1]     Plaintiff identifies C.O. Warner as C.O. "Werner," and Dr. Wolf-Friedman as Dr. "Wolf." It is clear from the motion to dismiss that defendants' names are "Warner" and "Wolf-Friedman," and the Court will identify them as such throughout this Opinion.

Now pending is Nurse Cody, Nurse Miller, Dr. Wolf-Friedman, C.O. Warner, and Supt. Wendland's (collectively, the "moving defendants") motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #42).

For the reasons set forth below, the moving defendants' motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor.[2]

On July 12, 2015, C.O. Sudranksi pat frisked plaintiff following "an incident in the yard." (Compl. at 51).[3] After patting plaintiff's inner and outer legs, C.O. Sudranski allegedly "forcefully reverse karate chopp[ed] plaintiff in the testicles, effecting the plaintiff's perineum area, testicles, groin, and then fondled plaintiff without plaintiff's consent." (Id. at 9). Lt. Hann witnessed the pat frisk but did not intervene.

Plaintiff's only allegations against the moving defendants relate to his medical treatment and grievance following the July 12 pat frisk.

Specifically, on July 12, 2015, plaintiff first sought treatment for his pat frisk-related injuries. Plaintiff alleges he saw Nurse Cody, who used "threatening mannerisms" and "a raised voice," when she told plaintiff he could be disciplined because he failed to report the incident.

---

[2] In addition to the complaint, the Court has reviewed and considered plaintiff's opposition and sur-reply to the moving defendants' motion to dismiss. (Docs. ##54, 61).

[3] As used herein, "Compl. at __" refers to the Court's electronic case filing system page number stamped at the top of each page of the complaint and its attachments, all of which are filed together as a single document. (Doc. #1).

(Compl. at 10). Rather than providing immediate treatment, Nurse Cody instructed plaintiff to complete a sick call slip for the following day.

On July 13, 2015, plaintiff again saw Nurse Cody at sick call. This time, she provided plaintiff a pass to visit the infirmary, but did so "with attitude." (Compl. at 21).

In the infirmary, plaintiff was seen by Nurse Miller. Nurse Miller informed plaintiff he needed to "'look at the injured cite [sic].'" (Compl. at 21). After an "abrupt" examination (id. at 11), Nurse Miller opined that plaintiff had a "minor irritation." (Id. at 21). Plaintiff protested that he was in pain, and had blood in his urine. Rather than sending plaintiff to the hospital, Nurse Miller prescribed pain relief mediation, which plaintiff alleges he never received. (Id. at 11).

On July 12, 2015, plaintiff filed a grievance about C.O. Sudranksi's pat frisk. After an investigation, Supt. Wendland responded as follows on September 25, 2015: "the officer in question conducted the pat frisk in a professional manner following policy and procedure . . . at no time did he 'fondle' the [plaintiff] in the groin area." (Compl. at 61). Supt. Wendland's decision was unanimously upheld by the Central Office Review Committee ("CORC") on December 2, 2015.

According to the complaint, plaintiff continued to have pain in his groin and testicular area, so he returned to sick call on an unspecified date and requested a doctor's appointment. Plaintiff alleges he had to wait one month before he was seen by his regular physician, Dr. Wolf-Friedman.[4] Rather than immediately referring plaintiff to a specialist, Dr. Wolf-Friedman recommended that plaintiff return in one month if his pain did not subside.

---

[4] It appears from documents submitted with plaintiff's complaint that he first saw Dr. Wolf-Friedman on July 17, 2015, then saw her again on September 3 and November 10, 2015, as well as on February 29, March 14, and July 14, 2016.

Following his second appointment with Dr. Wolf-Friedman, plaintiff was referred to a urologist, who examined plaintiff on October 20, 2015. During the appointment, plaintiff was seated on an examination table with his genitalia exposed when C.O. Warner "perversely looked" into the room through a window in the door for more than forty-five seconds. (Opp'n at 7). C.O. Warner did not move until plaintiff "very loudly" told him there was a "personal examination procedure going on." (Compl. at 37). C.O. Warner then smiled and walked away. The urologist prescribed plaintiff pain relief medication and an athletic support. Plaintiff alleges he never received the medication or athletic support. (Id. at 11).

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

4

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation and citation omitted). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II. Application

Plaintiff alleges the moving defendants violated (i) his Eighth Amendment right to be free from cruel and unusual punishment; (ii) his Fourteenth Amendment right to due process; (iii) his Fourteenth Amendment right to equal protection under the law; (iv) his Fourth Amendment right to privacy; and (v) New York state tort law.[5]

The Court addresses each claim in turn.

A. Deliberate Indifference Claim

The moving defendants argue plaintiff fails to state an Eighth Amendment claim against Nurse Cody, Nurse Miller, or Dr. Wolf-Friedman for deliberate indifference to plaintiff's serious medical needs.

The Court agrees.

---

[5] In his opposition brief, plaintiff alleges his Fifth Amendment rights were "violated in regards to 'not [sic] shall any person be subject for the same offense [sic] to be twice put in jeopardy of life or limb.'" (Opp'n at 3). The Court declines to address plaintiff's conclusory allegation of a Fifth Amendment violation.

To assert a claim for constitutionally inadequate medical care under the Eighth Amendment's ban against cruel and unusual punishment, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both an objective and a subjective component: plaintiff must plead facts showing (i) the alleged deprivation of medical care is "sufficiently serious," and (ii) the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 839–40 (1970)). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin v. Goord, 467 F.3d at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

In cases challenging the adequacy of the medical treatment that was given, "the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" Salahuddin v. Goord, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)).

The subjective component requires a showing that defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280. "[T]he charged official must act with a sufficiently

culpable state of mind." Id. (citing Wilson v. Seiter, 501 U.S. 294, 300 (1991)). It is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

Plaintiff alleges he is "in chronic[] and serious pain, effecting [sic] his daily activities," including his ability to sit, and walk the way he is accustomed to walking. (Opp'n at 3).[6] In certain circumstances, chronic pain constitutes a serious medical condition. See, e.g., Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). However, plaintiff does not allege defendants failed to provide any medical treatment; instead he challenges the adequacy of treatment provided, asserting in a conclusory fashion that it was deliberately indifferent.

Thus, the Court focuses on "the particular risk of harm faced by [plaintiff] due to the challenged deprivation of care, rather than the severity of [his] underlying medical condition, considered in the abstract." Smith v. Carpenter, 316 F.3d at 186.

Plaintiff fails plausibly to allege a deliberate indifference claim against Nurse Cody, Nurse Miller, or Dr. Wolf-Friedman.

Nurse Cody's one-day delay in providing plaintiff a pass to the infirmary does not constitute an unreasonable delay in care. See, e.g., Valdiviezo v. City of N.Y., 2017 WL 1191528, at *4 (S.D.N.Y. Mar. 29, 2017) ("The Second Circuit has generally found constitutional violations with respect to delays in providing medical care only when the 'officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for three days, or delayed major surgery for over two years.'") (quoting

---

[6] The Court notes that in addition to pain which may have resulted from the July 12, 2015, pat frisk, CORC's January 27, 2016, decision indicates plaintiff is "positive" for chronic scrotum and testicular cysts. (Compl. at 33).

7

Demata v. N.Y. State Corr. Dep't of Health Servs., 198 F.3d 233 (2d Cir. 1999) (internal quotation omitted)).[7]

Nurse Miller's examination is not alleged to have been medically inadequate. Plaintiff asserts Nurse Miller's exam was "abrupt," and alleges a provider at an outside hospital would have physically examined plaintiff, rather than "'bending at the waist and only looking.'" (Opp'n at 4). Although plaintiff might have preferred a more thorough exam, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d at 703.

Plaintiff alleges Dr. Wolf-Friedman is "very active in refusing plaintiff treatment from his prior facility." (Opp'n at 3). However, plaintiff does not allege how the treatment Dr. Wolf-Friedman provided was inadequate, or even how it differs from the treatment he previously received. Plaintiff's disagreement with Dr. Wolf-Friedman regarding the appropriate course of treatment does not rise to the level of a constitutional violation.

Likewise, to the extent plaintiff's complaint is that Dr. Wolf-Friedman should have referred plaintiff to a specialist sooner, "disagreements over . . . the need for specialists or the timing of their intervention, are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. May 21, 2001).

---

[7] Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

8

Accordingly, plaintiff fails plausibly to allege an Eighth Amendment deliberate indifference claim, and his claim is dismissed.[8]

B.  Due Process Claim

The moving defendants argue plaintiff fails to state a Fourteenth Amendment due process claim.

The Court agrees.

To establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).

Plaintiff alleges without specificity that Nurse Cody and Nurse Miller violated his due process rights. The Court liberally construes plaintiff's allegations as a claim that he was deprived of his right to be free from bodily injury.

"[A] § 1983 suit may not be predicated on a merely negligent deprivation of life, liberty or property." Nilsson v. Coughlin, 670 F. Supp. 1186, 1190 n.1 (S.D.N.Y. 1987) (emphasis added); see also Lunde v. Oldi, 808 F.2d 219, 220–21 (2d Cir. 1986) ("The Supreme Court held that the protections of the Due Process Clause, whether procedural or substantive, are simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property.").

---

[8] Plaintiff alleges he has not received pain relief medication or an athletic support, as prescribed by Nurse Miller and his treating urologist. Plaintiff's allegation is belied by CORC's January 27, 2016, decision, which indicates plaintiff was provided athletic supports and otherwise "treated as medically indicated." (Compl. at 33). "If the allegations of a complaint are contradicted by documents made a part thereof . . . the court need not accept as true the allegations of the complaint." Barnum v. Millbrook Care Ltd. P'ship, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994). Accordingly, the Court declines to give credence to plaintiff's allegation that he has not received treatment as prescribed.

9

Because plaintiff's allegations state nothing more than a possible negligence claim regarding Nurse Cody and Nurse Miller's medical treatment, they are insufficient to support a due process claim.

With respect to Supt. Wendland, plaintiff asserts: "[d]ue process fell on defendant [W]endland once the reply to plaintiff's grievance . . . was not replied to in a timely manner." (Opp'n at 6). Plaintiff characterizes Supt. Wendland's denial of his grievance as "untimely" (Compl. at 61), "prejudicial" (Opp'n at 6), deliberate and indifferent, and without regard for "Directive #4040." (Compl. at 61).[9]

It is well established that violation of state procedural rules or safeguards does not in itself constitute deprivation of due process, where the process actually provided nevertheless is permissible under the Constitution. See, e.g., Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003) ("state statutes do not create federally protected due process entitlements to specific state-mandated procedures"). Thus, to the extent plaintiff's due process claim is based upon Supt. Wendland's failure to comply with Directive #4040, plaintiff fails to state a claim. Plaintiff does not otherwise allege the grievance process at Green Haven is unconstitutional, or state how the denial of his grievance deprived him of a liberty interest.

Accordingly, plaintiff fails plausibly to allege a Fourteenth Amendment due process violation, and his claim is dismissed.

C.  Equal Protection Claim

Plaintiff alleges Nurse Cody, Nurse Miller, Dr. Wolf-Friedman, and C.O. Warner denied him equal protection under the law.

---

[9]  DOCCS Directive 4040 includes the regulations regarding the Inmate Grievance Program set forth in N.Y.C.R.R. tit. 7, § 701.1, et seq.

Although "the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class," a plaintiff who does not allege membership in a protected class may, nonetheless, bring a "class of one" equal protection claim. Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008). Here, plaintiff does not allege differential treatment based on his membership in a protected class, such as race or religion. Accordingly, the Court considers whether plaintiff has stated a class-of-one equal protection claim.

"A class-of-one claim exists 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). To state a claim, plaintiff must identify at least one individual with whom he can be compared. King v. N.Y. State Div. of Parole, 260 F. App'x 375, 380 (2d Cir. 2008) (summary order) (affirming dismissal of claim because plaintiff "failed to identify a single individual with whom he can be compared for Equal Protection purposes").

Plaintiff does not identify another individual with whom he can be compared. Accordingly, plaintiff fails to state an equal protection claim, and his claim is dismissed.

D.     Privacy Claim

The moving defendants argue plaintiff fails to allege a Fourth Amendment privacy claim. The Court agrees.

Although not explicit in the Constitution, "the [Supreme] Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution." Roe v. Wade, 410 U.S. 113, 152 (1973). "To state a cognizable privacy claim, an

11

inmate must allege that (1) he exhibited an actual, subjective expectation of bodily privacy, and (2) prison officials lacked sufficient justification to intrude on the inmate's [F]ourth [A]mendment rights." Telesford v. Annucci, 693 F. App'x 1, 3 (2d Cir. 2017) (summary order) (internal quotation omitted). Where, as here, an inmate's claim challenges an isolated search, rather than a policy or practice, in addressing the second prong of the inquiry courts must consider "the four Bell factors: (1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." Harris v. Miller, 818 F.3d 49, 58 (2d Cir. 2016) (citing Bell v. Wolfish, 441 U.S. 520, 559 (1979)).

Plaintiff's allegations weigh against finding a Fourth Amendment violation.

As to the first prong, plaintiff's allegations indicate that when he exhibited an expectation of privacy by loudly informing C.O. Warner there was a "personal examination procedure going on," C.O. Warner walked away. (Compl. at 37).

As to the second prong, plaintiff alleges he was subjected to a visual search while his genitals were exposed, an invasive intrusion. See Harris v. Miller, 818 F.3d at 58 ("[a] strip search that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy") (internal quotation omitted).

However, the search was conducted by a member of the same sex, in an orderly manner, and outside the presence of unnecessary spectators; these are all circumstances which weigh against finding a violation of plaintiff's right to privacy. Further, courts in this Circuit have found the presence of correction officers during medical treatment justified by the interest of protecting civilian staff from the threat of violence. See, e.g., Murray v. RC II Nephew, 2015

WL 1730178, at *6 (N.D.N.Y. Apr. 14, 2015); Vergara v. Vogliano, 1997 WL 86388, at *3 (S.D.N.Y. Feb. 28, 1997). As such, the justification for the search was valid.

Accordingly, C.O. Warner's presence outside the examination room, and his brief observation of plaintiff during the examination, did not violate plaintiff's constitutional right to privacy, and plaintiff's Fourth Amendment claim is dismissed.

  E. State Law Claims

The moving defendants argue plaintiff's state law claims must be dismissed pursuant to New York Correction Law § 24.

The Court agrees.

Section 24 of the New York Correction Law "confer[s] upon [DOCCS employees] an immunity from liability for activities that fall within the scope of the statute." Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996). Accordingly, "[c]ourts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." Davis v. McCready, 2017 WL 4803918, at *10 (S.D.N.Y. Oct. 23, 2017).

Here, plaintiff's allegations do not suggest defendants were acting outside the scope of their employment during any of the occurrences which give rise to his claims.

Accordingly, any state law claims plaintiff seeks to assert against the moving defendants are dismissed.

III. Leave to Amend

A district court ordinarily should not dismiss a pro se complaint for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112

(2d Cir. 2000) (quoting <u>Gomez v. USAA Fed. Sav. Bank</u>, 171 F.3d 794, 795 (2d Cir. 1999)). A court must grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." <u>Gomez v. USAA Fed. Sav. Bank</u>, 171 F.3d 794, 796 (2d Cir. 1999).

Here, the complaint and opposition papers, even liberally construed, do not contain allegations suggesting plaintiff has a valid deliberate indifference, due process, equal protection, privacy, or New York state law claim, against the moving defendants, that he has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe." <u>Cuoco v. Moritsugu</u>, 222 F.3d at 112. On the contrary, the Court finds that repleading would be futile because the problems with plaintiff's claims against the moving defendants are substantive, and supplementary or improved pleading will not cure the complaint's deficiencies. <u>See</u> <u>id</u>.

Moreover, plaintiff's claims against C.O. Sudranski and Lt. Hann are proceeding.

Accordingly, the Court declines to grant plaintiff leave to amend.

**CONCLUSION**

Defendants' motion to dismiss the complaint is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #42), and terminate defendants Cody, Miller, Wendland, Wolf, and Warner.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: December 20, 2017
       White Plains, NY

                      SO ORDERED:

                      _____
                      Vincent L. Briccetti
                      United States District Judge